IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 12-00693 SOM |
| | ) | CIV. NO. 17-00008 SOM-KSC |
| Plaintiff-Respondent, | ) | |
| | ) | **ORDER DENYING DEFENDANT'S** |
| vs. | ) | **MOTION UNDER 28 U.S.C. § 2255** |
| | ) | **TO VACATE, SET ASIDE, OR** |
| NGANATAFAFU AHOLELEI, | ) | **CORRECT SENTENCE BY A PERSON** |
| | ) | **IN FEDERAL CUSTODY; DENYING** |
| Defendant-Petitioner. | ) | **DEFENDANT'S MOTION FOR A** |
| | ) | **TEMPORARY STAY OF REMOVAL;** |
| | ) | **AND ISSUING A CERTIFICATE OF** |
| _____ | ) | **APPEALABILITY** |

**ORDER DENYING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN
FEDERAL CUSTODY; DENYING DEFENDANT'S MOTION FOR A TEMPORARY STAY
OF REMOVAL; AND ISSUING A CERTIFICATE OF APPEALABILITY**

I.        INTRODUCTION.

In 2013, Petitioner Nganatafafu Aholelei, a citizen of

Tonga and a lawful permanent resident of the United States, pled

guilty pursuant to a plea agreement to possessing explosives in

violation of 18 U.S.C. § 842(i)(1).  This court sentenced him to

three years in prison and three years of supervised release.

After Aholelei had served his prison term, an immigration judge

ordered him removed to Tonga because his § 842(i) conviction was

an aggravated felony subjecting him to automatic deportation.

This order was affirmed by the Board of Immigration Appeals.

Aholelei has an appeal from the removal order pending in the

Ninth Circuit, which has denied his motion for a stay of removal

pending review.  *See* Order, *Aholelei v. Sessions*, No. 17-70809
(9th Cir. Nov. 14, 2017).

Before this court is Aholelei's Petition for a Writ of
Error Coram Nobis, which seeks the withdrawal of his guilty plea
and vacatur of the conviction underlying the removal order.  For
reasons explained below, the court construes this filing as a
motion under 28 U.S.C. § 2255.  The § 2255 Motion seeks relief
under *Padilla v. United States*, 559 U.S. 356 (2010), arguing
that Aholelei's former defense attorney failed to warn him that
a § 842(i) conviction would result in his automatic deportation.
Had he known he would be automatically deported, Aholelei says,
he would not have pled guilty.

The court denies Aholelei's § 2255 Motion as untimely.
Aholelei knew of the facts supporting his *Padilla* claim by late
2013, but he did not file his § 2255 Motion until January 2017--
well beyond the one-year statute of limitations.  The court also
denies Aholelei's Motion for a Temporary Stay of Removal.

**II.      BACKGROUND.**

Aholelei is a citizen of Tonga who lives in Hawaii as
a lawful permanent resident.  ECF 62, PageID # 196.  He came to
Hawaii with his family when he was five years old.  ECF 61,
PageID #s 172-73; ECF 107-1, PageID # 625.  His mother,
daughter, and three of his siblings continue to live in Hawaii.
ECF 61, PageID #s 172-73.  He lived for years with his (now

former) girlfriend, their daughter, and his girlfriend's
children from prior relationships. *Id.* at PageID # 173. He
remains close to all of the children.

In 2003, Aholelei was convicted in state court in
Hawaii of two counts of Terroristic Threatening in the First
Degree. *See* Haw. Rev. Stat. § 707-715 (2003); ECF 61, PageID
#s 168-69. He was sentenced to concurrent five-year prison
terms. ECF 61, PageID #s 168-69. Aholelei was paroled in 2005,
but his state felony record was pivotal to his indictment in
federal court in 2012 for Possession of Explosives by a
Prohibited Person in violation of 18 U.S.C. § 842(i)(1) (Count
1).

Section 842(i) provides:

It shall be unlawful for any person . . .
who has been convicted in any court of[] a
crime punishable by imprisonment for a term
exceeding one year . . . to ship or
transport any explosive in or affecting
interstate or foreign commerce or to receive
or possess any explosive which has been
shipped or transported in or affecting
interstate or foreign commerce.

*Id.; see* ECF 62-3, PageID #s 211-12. In Count 1 of the
Indictment, Aholelei, having been previously convicted of First
Degree Terroristic Threatening, was charged with having
"knowingly received and possessed explosive materials, i.e.,
forty-eight (48) 3, 4, and 5 inch aerial display fireworks."
ECF 62-3 at PageID # 211. The fireworks were allegedly "shipped

3

[to the United States] . . . from the People's Republic of
China." *Id.*

Count 2 of the Indictment charged Aholelei with
Distribution of Explosives by a Non-Licensee in violation of 18
U.S.C. § 842(a)(3)(B) (Count 2), which provides: "It shall be
unlawful for any person . . . other than a licensee or permittee
knowingly . . . to distribute explosive materials to any person
other than a licensee or permittee." *Id.; see* ECF 62-3, PageID
# 212. The Indictment alleged that Aholelei had "knowingly
distributed explosive materials"--i.e., the same forty-eight
fireworks--"to a person who was not a licensee or permittee."
ECF 62-3 at PageID # 212.

A conviction under Count 1 for being a felon in
possession of explosives carried carry serious immigration
consequences. Possessing explosives in violation of § 842(i) is
an "aggravated felony," 8 U.S.C. § 1101(a)(43)(E)(i), which
makes a noncitizen "conclusively presumed to be deportable from
the United States," 8 U.S.C. § 1128(c). An alien convicted of
an aggravated felony is also statutorily ineligible for
cancellation of removal. *See* 8 U.S.C. § 1229(a) (explaining
that the "Attorney General may [only] cancel removal in the case
of an alien who . . . has not been convicted of any aggravated
felony"). By contrast, a Count 2 conviction for distribution of
explosives to an unlicensed person did not have such dire

4

immigration consequences.  The offense charged in Count 2 was not an aggravated felony and so did not portend automatic deportation.  *See* 8 U.S.C. § 1101(a)(43); ECF 62, PageID # 197.

Around April 16, 2012, Aholelei retained an attorney, Victor Bakke, to defend him against the federal charges.  ECF 76-1, PageID # 307.  Bakke represented Aholelei through sentencing.  *Id.*  The parties dispute whether, in the course of his representation, Bakke told Aholelei that he *would*, as opposed to *could*, be removed following a Count 1 conviction. The court discusses this dispute in detail later in this Order. What is clear is that, on May 22, 2013, Aholelei pled guilty before a magistrate judge to Count 1 pursuant to a plea agreement in which the United States agreed to move to dismiss Count 2.  ECF 48.

The plea agreement contained the following language related to possible immigration consequences for Aholelei:

> Defendant recognizes that pleading guilty
> may have consequences with respect to his
> immigration status if he is not a citizen of
> the United States.  Under federal law, a
> broad range of crimes are removable
> offenses, including the offense to which
> defendant is pleading guilty.  Removal and
> other immigration consequences are the
> subject of a separate proceeding, however,
> and defendant understands that no one,
> including his attorney or the district
> court, can predict to a certainty the effect
> of his conviction on his immigration status.
> Defendant nevertheless affirms that he wants
> to plead guilty regardless of any

> immigration consequences that his plea may
> entail, *even if the consequence is his*
> *automatic removal from the United States.*

ECF 76-2, PageID #s 312-13 (emphasis added).  Although the plea

agreement mentioned "automatic removal" as a possible

contingency for Aholelei, neither it, nor any other document

filed in the criminal case, stated outright that Count 1 was an

aggravated felony subjecting Aholelei to automatic removal or

contained any equivalent statement.

During the guilty plea colloquy, the magistrate judge

established that Aholelei was satisfied with Bakke's legal

representation and understood the rights he was waiving by

entering a guilty plea.  *See* ECF 76-3, PageID # 324.  Aholelei

confirmed that he consented to enter his guilty plea before the

magistrate judge.  *See id.*  Aholelei also stated that he had

read over the plea agreement, discussed its terms with Bakke,

and understood all the terms contained within the plea

agreement.  *See id.* at PageID # 326.  The magistrate judge also

discussed Aholelei's immigration status with him:

> THE COURT:  Very well.  I gather you are a U.S.
> citizen; is that correct?
>
> THE DEFENDANT:  That's not correct.
>
> THE COURT:  Oh, you're not.  Okay.  So what is
> your status?
>
> THE DEFENDANT:  I'm a legal alien.
>
> THE COURT:  Okay.  So I don't -- legal?

MR. BAKKE:  Resident.

          THE DEFENDANT:  Yeah, resident alien.

          THE COURT:  So would a conviction have any
          implications in this case for Mr. Aholelei?

          MR. SHIPLEY:  Yes, Your Honor, and it is covered
          in the plea agreement.  The Defendant is -- my
          understanding is he is a citizen of Tonga --

          THE COURT:  Okay.

          MR. SHIPLEY:  -- and would be possibly subject to
          deportation based on a decision of an Immigration
          Court following his release from custody.

          THE COURT:  Okay.  Mr. Aholelei, do you
          understand that that is a possibility in this
          case?

          THE DEFENDANT:  Yes, sir.

*Id.* at PageID #s 329-30.

          The magistrate judge recommended that the district

judge accept Aholelei's guilty plea, and the district judge did

accept it.  ECF 40, PageID # 124; ECF 76-3, PageID #s 337-38.

On September 9, 2013, this court sentenced Aholelei to three

years in prison and three years of supervised release.  ECF 59.

Judgement was entered on September 11, 2013.  ECF 60.  Aholelei

did not appeal or otherwise contest his conviction or sentence.

Aholelei did retain an immigration attorney, Emmanuel Guerrero,

in September 2013.

          There is no dispute that, in late 2013, Guerrero told

Aholelei that he had been convicted of an aggravated felony and

was subject to automatic removal. Aholelei expressed shock. Back in 2003, in connection with an earlier conviction, he had managed to escape immigration consequences with Guerrero's assistance, but that earlier conviction had not involved an aggravated felony.

Aholelei completed his prison term on February 19, 2016, but he remained in federal custody pursuant to an immigration detainer. *See* 8 C.F.R. § 287.7; ECF 99, PageID # 579; ECF 101, PageID # 590; ECF 107-1, PageID # 626. On that very day, the Department of Homeland Security's Immigration and Customs Enforcement ("ICE") authority issued a Notice to Appear that indicated that Aholelei was subject to removal because he had "been convicted of an aggravated felony," i.e., a violation of § 842(i). ECF 62-1, PageID # 203; *see* 8 U.S.C. § 1101(a)(43)(E)(i). Aholelei has continued to be held in federal custody under ICE authority. *See* ECF 62, PageID #s 196-97; ECF 97, PageID # 570; ECF 99, PageID # 580; ECF 108-1, PageID # 645.

On November 21, 2016, an immigration judge ordered Aholelei removed to Tonga. *See* ECF 62-2, PageID # 208. A month later, on January 6, 2017, Aholelei, proceeding *pro se* at the time, filed the instant Motion. *See* ECF 62. This court later appointed counsel for Aholelei.

In his Motion, Aholelei alleges that his "decision to accept the plea agreement [and plead guilty to Count 1] was based upon erroneous advice of counsel that the conviction '*may* result in his deportation.'" *Id.* at PageID # 197 (emphasis added) (internal citation omitted). Aholelei claims that if he had "been properly advised that deportation *would* automatically follow, he never would have entered into the plea agreement, or would have insisted that he plead to Count [2]." *Id.* (emphasis added). Aholelei argues that he is therefore "entitled to withdraw his guilty plea . . . on the grounds of ineffective assistance of counsel under *Padilla v. Kentucky*, 559 U.S. 356 (2010)." *Id.* at PageID # 198. The United States responds that Aholelei's Motion is untimely and fails on the merits, because, according to the United States, Aholelei's defense attorney did inform him that he would be deported following the § 842(i) conviction. ECF 76, PageID #s 299-300; ECF 101, PageID # 588.

In March 2017, after he lost in the BIA, Aholelei petitioned the Ninth Circuit for review of his removal order. *See* Pro Se BIA Petition for Review and Motion for Stay, *Aholelei v. Sessions*, No. 17-70809 (9th Cir. Mar. 21, 2017). The Ninth Circuit has not ruled on the merits of the petition, but it recently denied Aholelei's motion for a stay of removal pending review. *See* Order, *Aholelei v. Sessions*, No. 17-70809 (9th Cir. Nov. 14, 2017). The precise date of Aholelei's impending

deportation is not known, but DHS agents have informed him that his removal is "imminent."  ECF 107-1, PageID # 626.

On November 28, 2017, Aholelei filed a Motion for a Temporary Stay in this court, requesting that his removal be stayed until the court adjudicates his § 2255 Motion and for thirty days thereafter.  ECF 107, PageID #s 622-23.  The United States opposes any stay because, it says, Aholelei has not demonstrated a likelihood of success on the merits, and this court lacks jurisdiction to issue stays of removal.  ECF 114, PageID # 652. The present Order disposes of both Aholelei's § 2255 Motion and his Temporary Stay Motion, denying both.

**III.    THIS COURT TREATS AHOLELEI AS PROCEEDING UNDER § 2255.**

As a threshold matter, the court must determine the appropriate vehicle for Aholelei's *Padilla* claim.  The parties dispute whether Aholelei's filing should be treated as a coram nobis petition, which is how Aholelei originally styled it, or as seeking relief under § 2255, the statute that, for federal criminal cases, embodies what was the common law writ of habeas corpus.  The United States argues that coram nobis is unavailable because Aholelei is "in custody."  ECF 96, PageID #s 566, 576-77.  Aholelei disagrees but, if coram nobis is unavailable, he asks the court to treat his petition as a motion under 28 U.S.C. § 2255.  ECF 97, PageID #s 570-71.  Any § 2255 motion is subject to a one-year statute of limitations.  *See* 28

U.S.C. § 2255(f).  Coram nobis petitions, on the other hand, are "not subject to a specific statute of limitations," *Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994); "the one-year limitations period of 28 U.S.C. § 2255(f) is inapplicable to coram nobis relief," *United States v. Lee-Yaw*, No. CR04-5421 FDB, 2009 WL 361229, at *3 (W.D. Wash. Feb. 13, 2009) (citing *United States v. Kwan*, 407 F.3d 1005, 1012 (9th Cir. 2005)).

A writ of coram nobis is "a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007).  Coram nobis is not available to defendants who are "in custody" and eligible for § 2255 relief.  *See Hensley v. Mun. Court*, 411 U.S. 345, 349 (1973); *United States v. Monreal*, 301 F.3d 1127, 1132 (9th Cir. 2002) (citing *Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002)); *see also* 28 U.S.C. § 2255(a) (covering "prisoner[s] in custody under sentence of a court").  In-custody petitioners are barred from seeking a writ of coram nobis even if a § 2255 motion would prove unsuccessful.  *See United States v. Kwan*, 407 F.3d 1005, 1010 (9th Cir. 2005), *abrogated on other grounds*, *Padilla v. Kentucky*, 559 U.S. 356 (2010).

### A. Aholelei Is in Custody, Making Coram Nobis Relief Unavailable.

On February 19, 2016, Aholelei's three-year prison term ended. His Judgment provided for his prison term to be followed by a three-year supervised release term. ECF 60; ECF 99, PageID # 579; ECF 101, PageID # 590. Also on February 19, 2016, legal custody over Aholelei transferred, on paper, from the Bureau of Prisons ("BOP") to Immigration and Customs Enforcement ("ICE"), which had placed a detainer on him. ECF 62, PageID #s 196-97; ECF 99, PageID # 580. In physical reality, Aholelei remained inside a BOP federal detention center--although instead of being there to serve a prison sentence, he began awaiting action by immigration authorities. ECF 62, PageID #s 196-97; ECF 108-1, PageID # 645. On January 6, 2017, when Aholelei filed his self-styled coram nobis petition, he was still confined in a BOP facility. *See* ECF 62, PageID # 195.

Under the circumstances restraining Aholelei, he is "in custody" for § 2255 purposes. The reason that Aholelei must be deemed to be in custody is that he has not completed his three-year supervised release term. The parties agree that an individual serving a term of supervised release is an individual who is in custody; they dispute whether Aholelei's supervised release term has started to run. *See* ECF 99, PageID # 579; ECF

101, PageID # 590.  The law, however, is clear: all defendants
with unfinished supervised release terms are in custody,
regardless of whether they are being actively supervised by the
United States Probation Office or not.

In *United States v. Monreal*, the Ninth Circuit held
that a defendant who has "not served his term of supervised
release" is "in custody."  301 F.3d 1127, 1132 (9th Cir. 2002)
(citing *Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir.
2002)).  *Monreal* did not suggest that a supervised release term
fails to qualify a defendant as being "in custody" if the term
is tolled or if active supervision by Probation has not begun.
*See id.*  And in *United States v. Span*, 75 F.3d 1383 (9th Cir.
1996), the Ninth Circuit deemed a defendant "in custody" and
eligible for § 2255 relief "even though [his] sentence was
stayed at the time of filing."  *Id.* at 1387 n.5 (citing *Hensley
v. Mun. Court*, 411 U.S. 345, 351 (1973)).  Supervision that is
tolled or has yet to begin is not, for § 2255 "in custody"
purposes, distinguishable from a stayed term.

It makes no sense to distinguish active supervision
from an uncommenced or tolled supervision term in analyzing an
individual's custody status under § 2255.  All supervisees,
regardless of term status, confront the sort of liberty
restraints that have traditionally justified resort to the
"Great Writ."  If a release term has not begun, the supervisee

13

remains in prison (or his sentence has been stayed, and he is in custody for a different reason). *See United States v. Turner*, 689 F.3d 1117, 1119 (9th Cir. 2012) (explaining that release terms "commence[] on the day the person is released from imprisonment"); *Span*, 75 F.3d at 1387 n.5. If a supervised release term is tolled, that *also* denotes incarceration. *See* 18 U.S.C. § 3624(e) (providing for tolling only when a supervisee "is imprisoned in connection with a conviction for a Federal, State, or local crime"). And if supervision by Probation is actually occurring, supervisees must obey their conditions of release. These include furnishing DNA samples, submitting to drug testing, and accepting extra penalties following any new criminal activity. *See* 18 U.S.C. § 3583(d); USSG § 4A1.1(d). Other common release conditions include regularly reporting to a probation officer, maintaining regular employment, and not leaving the judicial district. *See* Thomas Nosewicz, *Watching Ghosts: Supervised Release of Deportable Defendants*, 14 Berkeley J. Crim. L. 105, 106 (2009).

In sum, all defendants with supervised release terms face restrictions "not shared by the public generally." *See Hensley*, 411 U.S. at 351 (citation omitted). Such restrictions "significantly restrain [supervisees in their] liberty to do those things which in this great country free men are entitled to do." *See Jones v. Cunningham*, 371 U.S. 263, 243 (1963)

(explaining why probationers can attack their convictions on habeas).  The Ninth Circuit, accordingly, treats defendants who have "not served [their full] term of supervised release" as "in custody." *Monreal*, 301 F.3d at 1132.  Aholelei is clearly in that class.  Because Aholelei has not yet served his full term of supervised release, he is in custody.

Even if tolled or uncommenced supervised release terms somehow failed to qualify defendants as "in custody," the law is clear that defendants whose supervised release terms are running can bring § 2255 motions.  *See Matus-Leva*, 287 F.3d at 761 (holding that individuals "still subject to supervised release . . . [are] in custody" for § 2255 purposes) (internal quotation marks omitted); *see also* ECF 99, PageID # 579 (conceding that "serving a supervised release term counts as being 'in custody' for purposes of §2255").  As discussed in the following paragraphs, Aholelei's supervised release term commenced on the day his criminal prison term ended, and that term continues to run even now.  Nor does *United States v. Johnson*, 529 U.S. 53 (2000), cited by Aholelei, render him out of custody.

> **1.   Aholelei's Supervised Release Term, Which Began When His Criminal Prison Term Ended, Is Currently Running.**

"A term of supervised release 'commences on the day the person is released from imprisonment[,]'" which, in turn, occurs when "a prisoner is released from the Bureau of Prisons'

custody." *United States v. Turner*, 689 F.3d 1117, 1118 (9th Cir. 2012) (quoting 18 U.S.C. §§ 3621(a) & 3624(a), (e)). Aholelei's supervised release term commenced the day his criminal prison term ended--February 19, 2016--even though he remains *civilly* confined under an ICE detainer.[1]

In *Turner*, the BOP, acting pursuant to the Adam Walsh Child Protection and Safety Act, civilly detained a "sexually dangerous" defendant who had completed his criminal prison term. 689 F.3d at 1119. Four years later, Turner moved to terminate his three-year supervised release sentence on the ground that it had run during his civil confinement. *Id.* The Ninth Circuit sided with Turner, holding that his release term commenced on the day his detention switched from criminal imprisonment to civil confinement. *See id.* at 1125. "Turner," the court explained in a subsequent case, "completed his prison sentence and the BOP 'released' him as a matter of law from its legal custody when that sentence ended. The fact that the BOP then immediately remanded him to its physical custody as a civil detainee did not mean he was never released." *United States v. Earl*, 729 F.3d 1064 (9th Cir. 2013) (discussing *Turner*, 689 F.3d at 1124).

---

[1] When ICE detains an alien in advance of removal proceedings, that detention is considered "civil, not criminal." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

       *Turner* favorably cited a Fifth Circuit case, *United States v. Garcia-Rodriguez*, which dealt with a defendant in Aholelei's exact position: an alien who had completed his criminal prison term and was in a BOP facility awaiting removal. *See Garcia-Rodriguez*, 640 F.3d 129, 130 (5th Cir. 2011); *Turner*, 689 F.3d at 1121. *Garcia-Rodriguez* held that such "a defendant is 'released from imprisonment' [and his supervised release term commences] the moment he [is] transferred from BOP custody to ICE custody to await deportation," even if "the transfer of custody from BOP to ICE . . . [is] a 'transfer by declaration' as opposed to a physical transfer of [the defendant] from one place of confinement to another." 640 F.3d at 134 & n.4 (quoting 18 U.S.C. § 3624(e)). Under the reasoning of *Turner* and *Garcia-Rodriguez*, Aholelei's supervised release term commenced on February 19, 2016, when his criminal prison term ended and his civil detention began.

       Aholelei insists that he is not on supervised release at this time. He contends that the Ninth Circuit's *Turner* decision is inapposite because it involves a civil detention under the Adam Walsh Protection Act, not any immigration law. ECF 102, PageID #s 603-04. That is a distinction without a difference. "Civil status means civil status. By definition, civil status does not mean 'imprisoned in connection with a conviction.'" *Turner*, 689 F.3d at 1124 (quoting 18 U.S.C.

§ 3624(e)).  Like Turner, Aholelei is on supervised release.  He is therefore in custody.

### 2. *United States v. Johnson* Does Not Render Aholelei Out of Custody.

Aholelei also claims that he is not in custody because his supervised release term must be deemed tolled under *United States v. Johnson*, 529 U.S. 53 (2000).  *See* ECF 99, PageID #s 579, 582.  His argument conflicts with Ninth Circuit precedent distinguishing *Johnson* from the civil detention context.

*Johnson* involved a prisoner who "had served too much prison time" after "two of his convictions were declared invalid."  529 U.S. at 54.  The Supreme Court asked "whether the excess prison time should be credited to [Johnson's] supervised release term, reducing its length."  *Id.*  The Court decided that Johnson's "supervised release term remain[ed] unaltered," explaining that the relevant statutory provisions "admonish[] that 'supervised release does not run during any period in which the person is imprisoned,'" and "[r]elease takes place on the day the prisoner in fact is freed from confinement."  *Id.* at 54, 57, 58 (quoting 18 U.S.C. §§ 3583(a), 3624(e)).

In *Turner*, the Ninth Circuit explicitly held that the reasoning of *Johnson* did not apply to "a civil detainee."  698 F.3d at 1124.  *Turner* emphasized that the defendant in *Johnson*

was in "criminal custody," however improperly, during the entirety of his confinement, as Johnson was held pursuant to (erroneous) criminal convictions. *Id.* The same could not be said of Turner, who was civilly detained under the Adam Walsh Child Protection and Safety Act and was therefore not "imprisoned in connection with a conviction." *Id.* (quoting 18 U.S.C. § 3624(e); *see also United States v. Earl*, 729 F.3d 1064, 1069 (9th Cir. 2013) (reaffirming "the critical distinction the court made in *Turner*," and noting that "Turner remained in custody due to a civil detention petition, and not in conjunction with a criminal sentence" (citation omitted)).

Aholelei's case is like Turner's, not Johnson's. When Aholelei filed his coram nobis petition on January 6, 2017, he had "completed his incarceration for a criminal conviction" and was in a "civil detention [that] happen[ed] to be overseen by the Bureau of Prisons." *See Turner*, 689 F.3d at 1118, 1124. Aholelei's "term of supervised release" therefore was running, not tolled, even though Aholelei "remained in [BOP] custody," and *Johnson* is inapposite. *See id.* at 1126.

Aholelei urges this court to evaluate his custody status under "*Johnson*, a case that actually makes sense . . . not *Turner*, which doesn't make sense at all." ECF 102, PageID # 608. This court, of course, is bound by the Ninth Circuit's decision stating that *Johnson* is inapposite to civil detainees.

*See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (explaining that circuit precedent controls unless intervening higher authority "is clearly irreconcilable with [the] prior circuit authority").

A supervised release term cannot be tolled unless the individual is "imprisoned in connection with a conviction for a Federal, State, or local crime." 18 U.S.C. § 3624(e). And under *Turner*, as Aholelei awaits deportation, he is not "imprisoned" within the meaning of § 3624(e), and his supervised release clock is therefore ticking. "In determining whether a particular detention constitutes 'imprisonment' for the purposes of § 3624(e)," the Ninth Circuit "made it clear that custody of the Bureau of Prisons does not determine whether someone is imprisoned; instead, we have focused on the nature of the custody." *Turner*, 689 F.3d at 1124. A civil detainee who remains in the BOP's physical custody "after [his] term of conviction has expired does not fit the definition of a person 'imprisoned in connection with a conviction.'" *Id.* at 1125. Similarly, the Fifth Circuit has held that "administrative detention by ICE does not qualify as imprisonment for purposes of § 3624(e)," because "administrative detention of an alien is not the same as imprisonment for a crime." *Garcia-Rodriguez*, 640 F.3d at 132. This is true even in aggravated felony cases, when the "administrative detention . . . by ICE . . . [is]

20

related to a crime that [was] previously committed[.] [T]hat relationship [still] does not turn such detention into 'imprisonment' as contemplated by § 3624(e)." *Id.* at 134.

Aholelei is now being civilly detained, not criminally punished. He is therefore not "imprisoned" within the meaning of § 3624(e), and his supervised release term is not tolled. *See Turner*, 689 F.3d at 1124; *Garcia-Rodriguez*, 640 F.3d 132.

As a last resort, Aholelei argues that the rule of lenity supports his interpretation of the supervised release statute. *See* ECF 102, PageID # 604. But the rule of lenity does not provide that a court should apply whatever interpretation of a statute a claimant may argue benefits him.[2] Instead, the rule provides that, in interpreting certain statutes, "it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *United States v. Bass*, 404 U.S. 336, 347 (1971) (citation omitted). Supervised release involves "civil sanctions [that] are punitive in character." *Turner*, 689 F.3d at 1125-26 (quoting *Leslie Salt Co. v. United States*, 55 F.3d 1388 (9th Cir. 1995)). The typical defendant

---

[2] The rule of lenity, as a rule of statutory construction, cannot lead the same provision to mean different things for different defendants. *See generally Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990) ("To permit this would be . . . in effect to permit every citizen to become a law unto himself." (quoting *Reynolds v. United States*, 98 U.S. 145, 166-67 (1878)).

would presumably want any "punitive" measure to apply for as short a time as possible, meaning that any tolling of supervised release would not comport with lenity.  Instead, tolling, which would delay the period when supervised release would end, would be the "harsher alternative."  *See Turner*, 689 F.3d at 1126 (applying the rule of lenity *against* tolling supervised release); *see also, e.g.*, *Johnson*, 529 U.S. at 55 (discussing defendant's argument that his supervised release term was not tolled); *Earl*, 729 F.3d at 1066 (same); *Garcia-Rodriguez*, 640 F.3d at 131 (same).

In sum, Aholelei was "in custody" for § 2255 purposes when he filed his purported coram nobis petition because, even assuming that a defendant with a tolled or uncommenced supervised release term could be deemed not in custody, Aholelei's supervised release term was actually running.  As a petitioner in custody, Aholelei could seek § 2255 relief, making a writ of coram nobis unavailable.  *See United States v. Kwan*, 407 F.3d 1005, 1009, 1012 (2005) (concluding that Kwan was not "in custody" and was therefore eligible for coram nobis relief because 1) he had "completed his prison term," 2) he had been "released from INS custody," 3) he had "completed his period of supervised release," and 4) he had "paid the entire $10,000 restitution ordered by the sentencing court"), *abrogated on other grounds*, *Padilla v. Kentucky*, 559 U.S. 356 (2010).

**B.** **In Deeming Aholelei's Motion to Fall Under § 2255, this Court is Acting Within its Discretion to Recharacterize Aholelei's Petition.**

Initially accepting Aholelei's characterization of his Motion as seeking a writ of coram nobis, the United States conceded that a "more usual remedy is not available" to Aholelei. *See* ECF 76, PageID # 299. Later, in its First Supplemental Memorandum, the United States changed course, arguing that Aholelei was in custody for § 2255 purposes and was therefore ineligible for coram nobis relief. *See* ECF 96, PageID # 566. Notwithstanding the United States' earlier failure to recognize the applicability of § 2255, there are good reasons for this court to deem Aholelei's Motion as falling under § 2255.

The court recognizes that, in the Ninth Circuit, the coram nobis requirement that a petitioner lack a more usual remedy does not appear to be jurisdictional. *See United States v. Taylor*, 648 F.2d 565, 572 (9th Cir. 1981) (holding that "the general rule of forbearance" under which a defendant cannot file a coram nobis petition at the same time he is prosecuting a direct appeal is not "a jurisdictional impediment"). A challenge to the availability of coram nobis relief can therefore be forfeited. But federal courts have the discretion to consider issues even if they were not originally raised by a party. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976). The

Ninth Circuit, for example, "will review an issue not present in an opening brief" for good cause shown, to prevent a manifest injustice, or when failure to raise the issue has not prejudiced the opposing party. *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992).

This case has taken an unusual path. This court requested additional briefing on threshold coram nobis issues not once but twice, *see* ECF 92; ECF 98, and the United States' in-custody argument is consistent with the tenor of those requests. Aholelei had a chance to address the in-custody argument relevant to § 2255 in multiple filings. *See* ECF 97, PageID #s 569-70; ECF 99, PageID #s 578-82; ECF 102, PageID #s 603-08. Aholelei is therefore far from prejudiced by this court's recharacterization of his Motion.

Of course, this court would not have treated Aholelei's filing as a § 2255 motion had Aholelei objected, given the effect such treatment would have had on Aholelei's ability to seek § 2255 relief later. *See Castro v. United States*, 540 U.S. 375, 377 (2003) (holding that before a court can "recharacterize a *pro se* litigant's motion as [a] . . . § 2255 motion," it must "inform[] the litigant of its intent to recharacterize" and "provide[] the litigant with an opportunity to withdraw, or to amend, the filing").

24

Aholelei himself asked that, if coram nobis relief was unavailable, his Motion be treated as a § 2255 motion. ECF 99, PageID #s 576-77. The court grants this request. *See, e.g.*, *United States v. Span*, 75 F.3d 1383, 1386 (9th Cir. 1996) (construing a coram nobis petition by an in-custody petitioner as a § 2255 motion); *Baker v. United States*, 932 F.2d 813, 814 (9th Cir. 1991) (same). The court turns now to the issue of whether Aholelei meets the timeliness requirement for a § 2255 motion.

**IV.     AHOLELEI'S § 2255 MOTION IS UNTIMELY.**

A § 2255 motion is timely if filed within the one-year statute of limitations set forth in § 2255(f). A motion must be filed one year from the latest of four dates: (1) when the judgment of conviction becomes final; (2) when the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) when the right asserted is initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; and (4) when the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

This court entered the Judgment in Aholelei's criminal case on September 11, 2013. ECF 60. Over three years later, on January 6, 2017, Aholelei filed his § 2255 Motion. *See* ECF 62, PageID # 195. Aholelei argues that his § 2255 Motion is timely either under § 2255(f)(4) or as a result of equitable tolling. ECF 97, PageID #s 571-72. Neither argument succeeds.

### A.   Aholelei's § 2255 Motion Is Not Timely Under 28 U.S.C. § 2255(f)(4).

The court held evidentiary hearings in this matter on June 27, 2017, and November 13, 2017. ECF 93; ECF 103. Based on the evidence presented at these hearings, the court finds that, at the latest, "the facts supporting" Aholelei's *Padilla* claim "could have been discovered through the exercise of due diligence" in late 2013. *See* 28 U.S.C. § 2255(f)(4). The one-year statute of limitations ran long before Aholelei filed his Motion.

Aholelei and his former defense attorney, Victor Bakke, gave differing accounts about their discussions going to the immigration consequences of a conviction on the felon-in-possession-of-explosives count (Count 1). Resolving those differences becomes unnecessary if this court accepts the uncontradicted testimony of immigration attorney Emmanuel Guerrero, who established that, at the latest, Aholelei was aware of the facts underlying the *Padilla* claim in late 2013.

### 1. Aholelei and Bakke Have Presented Dueling Accounts of What Bakke Told Aholelei.

Bakke repeatedly told this court that he had satisfied his *Padilla* obligations while representing Aholelei. According to Bakke, he "unequivocally" advised Aholelei on several occasions that a Count 1 conviction would, in his opinion, result in deportation. ECF 93, PageID #s 456-57.[3] According to Bakke, the two discussed "in great detail" the collateral immigration consequences of a conviction under 18 U.S.C. § 842(i), and Bakke frequently "told [Aholelei] I believed he will be deported." *Id.* at PageID #s 420, 441, 456-57; *see also* ECF 76-1, PageID #s 307-08.

Aholelei tells a different story. He testified that Bakke rushed through the case, fixated on the plea deal. He recalls that that Bakke said he was concerned that the AUSA assigned to the case would leave, and told Aholelei that if he did not plead guilty soon, the next AUSA might not be willing to drop one of the charges. Aholelei also testified that Bakke, in pushing him to plead guilty to Count 1, told him that Count 2 carried a mandatory minimum, while Count 1 permitted a sentence

---

[3] The court has a final transcript from the first evidentiary hearing, which it cites to when appropriate. *See* ECF 93. The court does not have a final transcript of the second evidentiary hearing, although the court has a "rough" unedited version of that transcript. The court does not quote from the rough transcript, but it has used it to aid its recollection of the testimony.

of probation.  If Bakke said this, he was in error.  Since at

least 1996, the penalty for "any person who violates any of

subsections (a) through (i) . . . of section 842" has been a

"fine[] under this title, imprison[ment] for not more than 10

years, or both."  18 U.S.C. § 844 (West 2017); *see, e.g.*, 18

U.S.C. § 844 (West 1996) (same).  In other words, both Count 1

and Count 2 carried only the possibility of imprisonment.

Crucially, Aholelei claims that Bakke never told him

that Count 1 was an aggravated felony, or otherwise indicated

that a plea of guilty to Count 1 would result in automatic

removal.  Aholelei also says that whenever he brought up

immigration issues with Bakke, Bakke's reply was that that was

an issue for his immigration lawyer--although Aholelei concedes

that Bakke did counsel him that there was a possibility that he

would be deported.

There are several reasons to credit Bakke's testimony

over Aholelei's.  While Bakke has a natural interest in not

being found to have been unconstitutionally "ineffective,"

Aholelei has a greater interest in avoiding removal.  If

Aholelei's *Padilla* claim fails, he will "be separated from his

family, friends, and the only home he has known his entire

life."  ECF 107-1, PageID # 627.  Bakke also offered a reason

that Aholelei pled guilty even in the face of immigration

consequences.  According to Bakke, he told Aholelei that his

sentence would probably be lower if he accepted the plea deal, and Aholelei responded that he was comfortable with the deal because he had "beat [immigration] before. I'll take my chances with it. I'll get an immigration lawyer and I will fight it again.'" ECF 93, PageID # 441; *see also* ECF 76-1, PageID #s 307-08.

Bakke was referring to a prior immigration proceeding in which Aholelei managed to avoid removal. The details of that prior immigration matter were presented in testimony by Aholelei and Guerrero. That case began in 2003, when Aholelei was convicted in state court in Hawaii of two felony counts of Terroristic Threatening in the First Degree. *See* ECF 93, PageID #s 496, 498; ECF 61, PageID #s 168-69. Those convictions led to removal proceedings, but they did not involve aggravated felonies carrying automatic removal. Aholelei fought his removal in Immigration Court, at the BIA, and in the Ninth Circuit. After losing in all three tribunals, Aholelei, represented by Guerrero, managed to get immigration officials to reopen the case. In that regard, Guerrero cited a Hawaii state court case and a BIA unpublished decision indicating that first-degree terroristic threatening in Hawaii is not a deportable offense. *See* ECF 93, PageID #s 491-92, 498-502. Guerrero's motion to reopen the case was successful, and Aholelei was ultimately allowed to remain in the United States. *See id.* at

PageID #s 491-92, 496.  As Guerrero described it: "I mean, . . .
he was actually ordered deported. He was halfway on the plane,
and for his good fortune he was able to remain here in the
country."  *Id.* at PageID # 494.

This court recognizes, however, that there is evidence
supporting Aholelei's account.  For example, although Bakke took
notes during his representation of Aholelei, no note suggests
that a guilty plea to Count 1 would lead to automatic removal.
*Id.* at PageID #s 406, 418.  Instead, as Bakke himself
acknowledged, his notes merely state that immigration "was an
issue."  *Id.* at PageID #s 406, 409.

Bakke testified that these "issue" notes served as
reminders to himself to research the immigration consequences of
Aholelei's guilty plea.  *Id.* at PageID # 409.  But one issue
note was on a document dated June 11, 2013, suggesting that
Bakke had not completed the immigration research before
Aholelei's guilty plea on May 22, 2013.  *See id.* at PageID
#s 409-10; *see also* Defendant's Exhibit A for Evidentiary
Hearing, at 7.  Bakke addressed that date by explaining that
immigration issues had come up before sentencing as well,
although he did not identify any new immigration issues arising
after Aholelei's guilty plea.  *See* ECF 93, PageID #s 409-10.

The nature of any immigration research by Bakke
remains unclear.  Bakke initially testified that "the issue [of]

30

it being an aggravated felony was about -- was a very brief review.  It was very clear [to me] that this was an aggravated felony and that [it] would subject [Aholelei] to what I believed was mandatory deportation." *Id.* at PageID # 418.  Yet, Bakke also said that he "had to really look it up" because the case involved a "felon in possession of an explosive device, but these were fireworks, and I was doing everything I can to see if maybe it wouldn't be an aggravated felony somehow." *Id.* at PageID # 455.  Notably, Bakke's handwritten notes suggest that he explored at some length whether the possession of "fireworks" would fit the elements of the crime; they do not suggest that he examined whether fireworks qualified as explosives for the purpose of determining if the § 842(i) conviction involved an aggravated felony.  *See* Defendant's Exhibit A for Evidentiary Hearing, at 5, 9, 11.

Bakke acknowledged in his testimony that the only evidence that he met his *Padilla* obligation was his word.  His notes do not establish that he informed Aholelei that he would be automatically removed following a Count 1 conviction. Similarly, Aholelei's Memorandum in Support of a Reasonable Sentence, filed by Bakke right before Aholelei's sentencing, said only that Aholelei would "most likely" be deported in the wake of his § 842(i) conviction; it said nothing of automatic removal.  ECF 57, PageID # 142.

31

Somewhat murky is the content of any discussions Bakke and Guerrero had. Bakke testified that he had spoken with Guerrero about Aholelei when he ran into him around the courthouse. ECF 93, PageID # 449. Bakke says that the two attorneys had informal conversations in which Bakke asked about Aholelei's prior immigration case, and also told Guerrero what was happening in the criminal proceeding. *See id.* at PageID # 447. Bakke, however, did not "recall consulting with Guerrero to get any advice as to whether Aholelei would be deported as a matter of course" following his § 842(i) conviction. *See id.* Additionally, on a document dated September 7, 2013, two days before Aholelei's sentencing, Bakke wrote a note stating "Manny wants 5K." *See id.* at PageID # 416; *see also* Defendant's Exhibit A for Evidentiary Hearing, at 4. Bakke testified that he did not recall what the note referred to, but said that "we [probably] had some conversation about [Guerrero] being hired by the family to represent [Aholelei] on . . . immigration." ECF 93, PageID # 416.

Guerrero's recollection is that, around September 7, 2013, Bakke called him to ask "about Mr. Aholelei's situation and asked me for some information with respect to the immigration consequences." *Id.* at PageID # 492. Aholelei recalled being told by Bakke that he had talked with Guerrero about the immigration consequences of a Count 1 plea and that

Guerrero would be able to handle the immigration issues.
Guerrero testified that he responded to Bakke by saying that "in
order for me to give a legal opinion . . . there would be need
to be a retainer" of $5,000.  *Id.* at PageID #s 492-93.

> ### 2. Guerrero's Testimony Makes it Unnecessary to Resolve Discrepancies Between What Aholelei and Bakke Describe.

The court need not resolve the discrepancies between
Aholelei and Bakke given additional, uncontradicted testimony by
Emmanuel Guerrero that Aholelei was well aware of any and all
facts supporting his *Padilla* claim by late 2013.  According to
Guerrero, Aholelei's family retained him shortly after September
11, 2013.  *Id.* at PageID # 495.  Guerrero says that he then told
Aholelei, in late 2013, that Aholelei had been convicted of an
aggravated felony and was subject to automatic deportation.  *Id.*
at PageID #s 505-06.  Guerrero testified that he also told
Aholelei that there was a chance that there would be confusion
about what Aholelei's conviction was really for, since his
Judgment reflected not just "an aggravated felony under [18
U.S.C. § ] 842" but also under "[§] 844," which is the statute
that sets forth the penalties accompanying a § 842(i) violation.
*Id.; see* ECF 60, PageID # 155 (indicating that the defendant "is
adjudicated guilty of . . . 18 USC 842(i)(1) and 844(a)(1)").

Guerrero clarified: "What I told him was the conviction [under § 842(i)][4] . . . it's there on the INA, that's an aggravated felony. The only hope you got after I look at it is a possibility we can challenge it because the record of conviction had another statute." *Id.* at PageID # 510. Guerrero testified, however, that he did tell Aholelei that it was still "virtually certain that he would face removal." ECF 93, PageID #s 505-06.

Guerrero describes Aholelei as reacting with "pure shock." *Id.* at PageID # 507. According to Guerrero, "he told me, 'What the heck?' I told [him], 'no. You -- it's going to be tough, tough. You gone.' And he goes, 'No, that's not what I was told.' He actually thought -- I can't believe it -- he actually thought he had a chance to stay." *Id.* at PageID # 510. Guerrero says he asked Aholelei, "'What's the matter with you? Why [did] you never call me?' [B]ecause I would have told him" earlier that § 842(i) is an aggravated felony. *Id.* at PageID # 507. Guerrero testified that he then gave Aholelei "two choices. We can initiate [a challenge to any consideration of removal] now by contacting the Department [of Homeland Security], or . . . you can wait 'till they initiate

---

[4] At this point in his testimony Guerrero mistakenly referred to § 844, not § 842(i), *see* ECF 93, PageID # 510, but it was clear to the court in context that he meant to refer to § 842(i).

proceedings." *Id.* at PageID # 511.  Aholelei elected to wait.
*See id.* at PageID #s 507, 511.

The crux of Guerrero's testimony is that he told
Aholelei, soon after he was sentenced on September 11, 2013,
that he had been convicted of an aggravated felony.  *See id.* at
PageID #s 505-07.  No evidence contradicts or undermines
Guerrero's testimony on this point.  The conflicting accounts
provided by Aholelei and Bakke address events before Aholelei
retained Guerrero in late 2013.

Aholelei himself testified that he spoke with Guerrero
on September 12, 2013, the day after he was sentenced.
According to Aholelei, Guerrero told him that he appeared to
have pled guilty to an aggravated felony, although Guerrero
needed to do research to be sure.  Aholelei says Guerrero then
explained what an aggravated felony was, told him there was a
chance he could argue that Aholelei's conviction was not an
aggravated felony, but told him he would need to wait until ICE
placed a detainer to litigate the issue.  Aholelei testified
that he followed the advice of his immigration attorney and
waited, taking no direct appeal and filing no motion to withdraw
his guilty plea until January 6, 2017, when he filed the present
Motion.  Notably, having heard Guerrero's testimony, Aholelei
never denied that he was surprised by what Guerrero had told
him, meaning that Aholelei understood from Guerrero that he

faced immigration consequences more dire than he had anticipated (whether because Bakke had not fully advised Aholelei of these consequences or because Aholelei had not understood or taken seriously the advice Bakke had provided). Nor did Aholelei in any way cast doubt on Guerrero's testimony that he told Aholelei that he was virtually certain to be deported.

The court accepts as credible Guerrero's uncontradicted testimony. Like Bakke, Guerrero does not currently represent Aholelei. In connection with the § 842(i) conviction, Guerrero represented Aholelei before the Immigration Court and the BIA; Aholelei filed both his § 2255 Motion and his Ninth Circuit petition for review of the removal order *pro se*. *See* Pro Se BIA Petition for Review and Motion for Stay, *Aholelei v. Sessions*, No. 17-70809 (9th Cir. Mar. 21, 2017); ECF 62; ECF 93, PageID # 491. Unlike Bakke and Aholelei, Guerrero has no personal stake in the outcome of this proceeding.

This court is not here saying that either Aholelei or Bakke was not credible. Rather, this court determines that, regardless of whether this court accepts or rejects all or any part of either witness's statements, Guerrero's uncontradicted testimony is decisive.

Crediting Guerrero's testimony, this court finds that, at least by late 2013, "the facts supporting" Aholelei's *Padilla* claim "could have been discovered through the exercise of due

diligence." *See* 28 U.S.C. § 2255(f)(4). Once Guerrero informed Aholelei that he had pled guilty to an aggravated felony, Aholelei knew or should have known 1) that his § 842(i) conviction made him automatically deportable, and 2) that even if Bakke had told Aholelei that deportation was merely "possible," that was incorrect. These are precisely the facts needed to bring a *Padilla* claim. *See Padilla v. United States*, 559 U.S. 356, 360 (2010) (finding defense counsel unconstitutionally ineffective when he failed to inform his client that his "conviction for drug distribution made him subject to automatic deportation"); *United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011) ("A criminal defendant who faces almost certain deportation is entitled to know more than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty."). Consequently, the one-year § 2255(f) clock started ticking, at the latest, in late 2013, years before Aholelei sought relief in the present 2017 action.

The timing of the Notice to Appear, which Aholelei cites as starting his limitation period, did not actually affect the § 2255(f)(4) clock. That document gave notice that immigration authorities were commencing proceedings; the document did not provide new information about whether Bakke had effectively represented Aholelei. *See Hasan v. Galaza*, 254 F.3d

1150, 1154 (9th Cir. 2001) ("Time begins when the prisoner knows
(or through diligence could discover) the important facts, not
when the prisoner recognizes their legal significance.").
Aholelei was also free to file a § 2255 motion before he
received the Notice to Appear from immigration authorities.  *See
Lee v. United States*, 137 S. Ct. 1958, 1963 (2017) ("Upon
learning that he would be deported after serving his sentence,
Lee filed a motion under 28 U.S.C. § 2255 [asserting a *Padilla*
claim] to vacate his conviction."); *Bonilla*, 367 F.3d at 984
(holding that the district court erroneously denied Bonilla's
presentencing motion to withdraw his guilty plea based on
*Padilla*).  Aholelei's failure to do so until January 2017,
despite being informed by his immigration attorney by late 2013
that he had been convicted of an aggravated felony, makes his
§ 2255 Motion untimely.

**B.    Aholelei Is Not Entitled to Equitable Tolling.**

When a § 2255 motion is untimely, "a court may toll
the one-year limitation period if (1) the petitioner has
diligently pursued his rights, and (2) extraordinary
circumstances exist."  *United States v. Aguirre-Ganceda*, 592
F.3d 1043, 1045-46 (9th Cir. 2010); *see Holland v. Florida*, 560
U.S. 631, 649 (2010); *see also Mendoza v. Carey*, 449 F.3d 1065
(9th Cir. 2006) (emphasizing that a habeas petitioner must
satisfy both requirements).  The petitioner bears the burden of

demonstrating that equitable tolling applies, and "the threshold necessary to trigger equitable tolling . . . is very high." *Aguierre-Ganceda*, 592 F.3d at 1045-46 (quoting *Mendoza v. Carey,* 449 F.3d 1065, 1068 (9th Cir. 2006)); *Espinoza-Matthews v. California,* 432 F.3d 1021, 1026 (9th Cir. 2005).

Aholelei argues that "equity suggests" his limitations period should be tolled "until, at the earliest, it became clear to Aholelei that his trial counsel had misadvised him about the immigration consequences of his plea." ECF 97, PageID # 571. Aholelei claims this occurred on February 19, 2016, when the Notice to Appear issued. *See* ECF 62-1, PageID # 205; ECF 99, PageID # 583. But Guerrero's testimony establishes that Aholelei learned of any alleged misadvisement by Bakke in 2013, when Guerrero told Aholelei that the 842(i) conviction was an aggravated felony subjecting him to automatic removal.

Even assuming *arguendo* that Aholelei did not recognize the effect of Guerrero's words until he received the Notice to Appear, the Ninth Circuit has repeatedly held that "a pro se petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling." *Waldron-Ramsey v. Pacholke,* 556 F.3d 1008, 1013 n.4 (9th Cir. 2009); *see also, e.g.*, *Raspberry v. Garcia,* 448 F.3d 1150, 1154 (9th Cir. 2006) (same). The timing of the Notice to Appear, in other words, cannot constitute an "extraordinary circumstance." *Accord*

*Rodriguez-Lugo v. United States*, No. 09-CV-2174 BEN AJB, 2010 WL
3167545, at *3 (S.D. Cal. Aug. 9, 2010) (holding that a
petitioner's argument that he could not have filed his petition
"earlier because he only learned of the full consequences of his
1975 plea . . . during [a] 2009 removal proceeding" was not an
extraordinary circumstance), *aff'd on other grounds*, 458 F.
App'x 688 (9th Cir. 2011).

The record also suggests that Aholelei delayed
presenting his *Padilla* claim because his immigration counsel had
advised him to wait until ICE put a detainer on him before
pursuing additional litigation.  But this was advice going to
whether to challenge removal, not when to file a motion under
§ 2255.  Nothing in the record suggests that Guerrero was
retained to give advice with respect to a § 2255 proceeding, or
that he gave any such advice.

Even if Guerrero could somehow be viewed as having
advised Aholelei to wait to seek such relief under § 2255, the
Ninth Circuit has held that a delay caused by attorney misadvice
does not constitute an "extraordinary circumstance" triggering
equitable tolling.  *See Ramsey v. Pacholke*, 556 F.3d 1008, 1013
(9th Cir. 2009) (holding that "oversight, miscalculation or
negligence" do not justify equitable tolling (quoting *Harris,*
515 F.3d 1051, 1055 (9th Cir. 2008)); *Frye v. Hickman,* 273 F.3d
1144, 1146 (9th Cir. 2001) (holding that extraordinary

circumstances do not include a lawyer's miscalculation of a limitation period); *Bawaneh v. United States*, No. CR-04-1134 CAS, 2011 WL 1465775, at *5 (C.D. Cal. Apr. 18, 2011) (holding that the petitioner's defense counsel's "misadvice during his criminal proceeding, which is causing him to face deportation, [does not] constitute[] an 'extraordinary circumstance'"). Without addressing any coram nobis remedy, this court rules that Aholelei does not meet the "very high" bar for equitable tolling in the § 2255 context. *See Aguierre-Ganceda*, 592 F.3d at 1045-46 (quoting *Mendoza v. Carey,* 449 F.3d 1065, 1068 (9th Cir. 2006)). Aholelei's § 2255 Motion is untimely.

### C. The Court Declines to Ignore the Timeliness Issue Even Though the United States Failed to Raise the Timeliness Issue at the Outset.

Aholelei claims that the United States forfeited any timeliness argument by not raising it until, relatively late in these proceedings, it filed its Response to Aholelei's Second Supplemental Memorandum. ECF 97, PageID # 571; ECF 101. The United States responds that it did reserve the issue of timeliness in its initial response to Aholelei's petition, by stating in a footnote:

> [I]f Aholelei did not know he would face
> automatic deportation until he received the
> February 19, 2016 Notice to Appear and the
> November 21, 2016 Immigration Order, as
> Aholelei contends in his Petition, then
> valid reasons would appear to exist for not
> attacking the conviction earlier via direct

41

> appeal or a § 2255 petition.  However, [a
> declaration submitted by Victor Bakke]
> demonstrates that, prior to Aholelei
> entering a guilty plea on May 22, 2013, Mr.
> Bakke warned Aholelei that he faced
> automatic deportation if he were found
> guilty of or pled guilty to Count 1.  If the
> Court chooses to hold an evidentiary
> hearing, the Government reserves the right
> to address whether Aholelei's petition is
> barred by laches.

ECF 76, PageID # 299 n.2; *see* ECF 101, PageID # 595 n.1.

Both Aholelei and the United States discuss the issue
in terms of waiver, but the issue is actually one of forfeiture.
"The terms waiver and forfeiture . . . are not synonymous.
'[F]orfeiture is the failure to make the timely assertion of a
right[;] waiver is the 'intentional relinquishment or
abandonment of a known right.'"  *Hamer v. Neighborhood Hous.
Servs.*, 138 S. Ct. 13, 17 n.1 (2017) (alteration in original)
(quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

This court's view of the footnote the United States
cites is that it does not raise (or even refer to) the issue of
timeliness under § 2255.  Instead, the footnote discusses
"laches" and the coram nobis requirement that "valid reasons
. . . appear to exist for not attacking the conviction earlier."
*Id.*; *see United States v. Riedl*, 496 F.3d 1003, 1007 (9th Cir.
2007) ("[A] petitioner must show the following to qualify for
coram nobis relief: . . . (2) valid reasons exist for not
attacking the conviction earlier." (alteration in original)

(quoting *Hirabayashi v. United States*, 828 F.2d 591, 604 (1987))). The "valid reasons" requirement is distinct from § 2255 timeliness. *See Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994); *United States v. Kwan*, 407 F.3d 1005, 1012 (2005), *abrogated on other grounds*, *Padilla v. Kentucky*, 559 U.S. 356 (2010). Any reservation of a "laches" argument does not put § 2255 timeliness into play; laches applies in the coram nobis context. *See Riedl*, 496 F.3d 1008 (explaining that many Ninth Circuit "decisions have cited laches in their discussions of coram nobis petitions' timeliness").

Nor did the United States discuss § 2255 timeliness in its first Supplemental Memorandum, despite arguing in that document that coram nobis was inapplicable because Aholelei was "in custody." *See* ECF 96. The first time the United States addressed the issue was in its Response to Aholelei's Second Supplemental Memorandum. *See* ECF 101, PageID # 588.

Any alleged forfeiture by the United States does not act as a bar to this court's consideration of the timeliness issue. Timeliness under § 2255(f) does not go to subject matter jurisdiction. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). A federal court may reach an issue that has been forfeited. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976); *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992). Good cause excuses any alleged forfeiture here.

43

As this court has already noted, the procedural
history of this case has been tangled from the beginning.
Aholelei, proceeding *pro se*, mistakenly sought coram nobis
relief rather than § 2255 relief. While the United States
initially overlooked Aholelei's mistake, *see* ECF 76, PageID
# 299 (conceding that a "more usual remedy is not available" to
Aholelei), it ultimately addressed the timeliness issue in
response to Aholelei's request that the court construe his
petition as a § 2255 motion in the event it found coram nobis
unavailable. *See* ECF 97, PageID #s 570-71 (so requesting); ECF
101, PageID # 588 (so addressing).

The United States was not required to address any
§ 2255 timeliness issue before Aholelei sought to have his
Motion construed as one under § 2255. Aholelei, moreover, was
not prejudiced by any delay in the raising of the § 2255
timeliness issue. He was able to address § 2255 timeliness in
multiple memoranda and in hearings. *See* ECF 97, PageID #s 571-
72; ECF 99, PageID # 583; ECF 102, PageID # 603. Under these
circumstances, this court sees no reason to refrain from
addressing the timeliness issue.

V.      **THE COURT DENIES AHOLELEI'S REQUEST FOR A TEMPORARY
        STAY OF REMOVAL.**

Aholelei has also filed a Motion for a Temporary Stay
of Removal. *See* ECF 107. His request for a stay "until this

Court has had an opportunity to adjudicate" the § 2255 Motion,
however, is rendered moot by this very order. He has not yet
been removed, so he needs no stay pending the issuance of this
order.

That leaves his additional request that this court
stay his removal for "the thirty-day period after this Court
issues its ruling." *See id.* at PageID # 623. Aholelei has
asked for this thirty-day period "to allow [him] time to review
the Court's decision and [to] determine whether to file an
appeal and seek a further stay of the removal order." *Id.* As
it turns out, that request also appears to be moot. In a
telephone conference on November 29, 2017, *see* ECF 110, this
court cautioned Aholelei's counsel that, to avoid having events
overtake him, he should be prepared to react immediately if
immigration authorities acted to remove Aholelei on little or no
notice. Aholelei's counsel assured this court that he was
preparing to do precisely that.

The latest information this court has from the United
States regarding when Aholelei might be removed is that January
2018 is the earliest that removal will occur. Given the
preemptive preparation counsel assured the court he was engaging
in, that gives Aholelei's counsel sufficient time to react
without the need for a thirty-day stay. That request is denied
as unnecessary, without this court's resolution of the legal

issues briefed by the parties.  Those legal issues focus primarily on jurisdictional analyses, but those analyses address whether this court has jurisdiction to grant the requested stay. No party questions this court's jurisdiction to deny the request on the grounds cited here.

## VI.        THE COURT ISSUES A CERTIFICATE OF APPEALABILITY.

"The standard for granting a certificate of appealability is low. All that's required is that 'reasonable jurists could debate' whether the petition states a 'valid claim of the denial of a constitutional right' and whether the district court 'was correct in its procedural ruling.'" *Frost v. Gilbert*, 835 F.3d 883, 888 (9th Cir. 2016) (en banc) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Given this "low" standard, the court issues Aholelei a certificate of appealability on the questions of whether Aholelei's request for relief falls under § 2255 rather than coram nobis, and whether his § 2255 Motion is timely.

## VII.       CONCLUSION.

The court DENIES as untimely Aholelei's § 2255 Motion to withdraw his guilty plea and vacate his conviction, DENIES Aholelei's Motion for a Temporary Stay of Removal, and ISSUES a certificate of appealability.

This Order concludes what was originally styled by Aholelei as a coram nobis petition.  The Clerk of Court is

directed to close this matter and to enter Judgment for the United States.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 22, 2017.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

Nganatafafu Aholelei v. United States of America, CRIM. NO. 12-00693 SOM, CIV. NO. 17-00008 SOM-KSC; ORDER DENYING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY; DENYING DEFENDANT'S MOTION FOR A TEMPORARY STAY OF REMOVAL; AND ISSUING A CERTIFICATE OF APPEALABILITY.